UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

KRYSTAL FORD                                                                                                           PLAINTIFF

v.                                                                                              CIVIL ACTION NO. 3:05-CV-347

LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT, et al.                                                                              DEFENDANTS

### MEMORANDUM OPINION

This matter is before the court upon the motion of the defendant, Louisville/Jefferson County Metro Government ("Metro" or "Metro Corrections"), for summary judgment. In this civil rights action alleging a violation of 42 U.S.C. § 1983, the plaintiff, Krystal Ford ("Ford") claims that her constitutional rights were violated when she was subjected to a strip search while in the custody of Metro Corrections. She claims Metro is liable for this violation due to Metro's failure to adequately train its officers.[1]

### BACKGROUND

On December 14, 2004, Ford was arrested on shoplifting charges and taken to Metro Corrections. In accordance with Metro Corrections procedure, all persons admitted to the jail are subjected to a hand or "pat down" search[2]. At the time Ford was booked, Officer Chris Johnston was processing and searching the newly arrested detainees. However, there was no female officer on duty on the booking floor. Officer Tobhiyah Westenhofer was working in the property room that

---

[1] In her complaint For also alleges Metro is liable for failure to adequately hire and supervise its corrections officers, as well as negligent hiring. Ford also asserts a claim for punitive damages. Because Ford has not addressed these claims in her Response, it is assumed Ford concedes them.

[2] Ford does not complain of any violation of her rights in connection with a pat down search.

evening, and because Metro Corrections' policy requires that female detainees be searched by female officers, Officer Johnston asked Westenhofer to perform the search.

Westenhofer conducted a pat down search of Ford in the grill area of the jail[3] during which Westenhofer learned that Ford was wearing multiple layers of clothing, including thermal underwear under her jeans. Westenhofer asked Ford to remove the outer layer of her clothing, including her jeans, and conducted a second pat down search. The parties provide differing versions as to what transpired next.

Westenhofer claims that during the second pat down search she felt a lump in Ford's groin area, possibly indicating the presence of a foreign object. According to Westenhofer, she asked Ford what she had, and Ford replied that it was a sanitary pad. Ford denies having this conversation and denies that she was wearing a sanitary pad at the time of her arrest. Westenhofer testified, and Officer Johnston confirms, that she told Officer Johnston she was taking Ford to the restroom to change her sanitary pad. Westenhofer further testified that she took Ford to a private restroom, where she then asked Ford to change her pad and show it to her after she removed it. Westenhofer claims she watched Ford remove the pad and throw it in the trash, and then returned her to the grill area.

Ford denies that she was wearing a sanitary pad and denies carrying anything in her underwear. Ford claims that upon completion of the second pat down search Westenhofer took her to the restroom, where Westenhofer then asked her to bend over, spread her buttocks, and cough while she looked inside of her. Westenhofer denies this.

---

[3]The "grill" is the area where all arrestees are booked and initially searched.

After returning from the restroom, Ford did not complain about the search. However, on December 17, 2004, Ford did contact Metro Corrections Professional Standards Unit and requested to file a formal complaint, stating that she had been illegally stripped searched.

## DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. V. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

Ford cannot base a claim under 42 U.S.C. § 1983 against Metro based solely on the conduct of Westenhofer, or any other officer, because a municipality cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents. *See Gregory v. Shelby County, Tenn.*, 220

F.3d. 433, 442 (6th Cir. 2000) (citing *Monell v. Department of Social Services,* 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).  For governmental liability to attach, there must be execution of a government policy or custom which results in the deprivation of a constitutionally protected right.  *Id.*  To prove her § 1983, Ford must establish (1) that she was deprived of a constitutional right and (2) that a Metro policy or custom is responsible for that violation.  *See Doe v. Claiborne County, Tenn.* 103 F.3d 495, 505-06 (6th Cir.1996) (citing *Collins v. Harker Heights*, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.E.2d 261 (1992)).

### I.  Ford's Constitutional Rights

In considering the issue of strip searches, courts must utilize a balancing test for reasonableness.  *See Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979); *Dobrowoiskyj v. Jefferson County, Ky.*, 823 F.2d 955, 957 (6th Cir. 1987).  The Supreme Court has stated:

> The test of reasonableness under the Fourth Amendment. . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell*, 441 U.S. at 559.

In balancing the reasonableness of a strip search of an individual arrested for a minor offense not normally associated with violence, the Sixth Circuit has held that such an arrestee has a right to be free from a strip search unless there is an individualized reasonable suspicion that the arrestee is carrying or concealing a weapon or other contraband.  *Masters v. Crouch*, 872 F.2d 1248, 1255 (6th Cir. 1989).

Ford was arrested for a non-violent minor offense. Thus, in order for Westenhofer to have constitutionally performed a strip search, she needed to have an individualized reasonable suspicion that Ford was carrying or concealing a weapon or other contraband. Although a Metro Corrections Professional Standards Unit investigation concluded that Westenhofer had "probable cause" to strip search Ford, the court is not bound by that determination.

There is no question that Westenhofer would have had that individualized reasonable suspicion if she felt a lump in Ford's groin area, whether that lump was or was not a sanitary pad. However, viewing the facts in a light most favorable to Ford, the court must conclude that a genuine issue of material fact exists as to whether she possessed that individualized reasonable suspicion. Westenhofer and Ford dispute the facts giving rise to the strip search. Westenhofer contends she felt a lump during the pat down search, while Ford contends she was not wearing or carrying anything which could have aroused Westenhofer's suspicion. Although Officer Johnston confirms that Westenhofer told him that she was taking Ford to the restroom to change her sanitary pad, a genuine issue of material fact still exists.

It may be unlikely that Westenhofer made up a pretext to strip search Ford and told Officer Johnston the pretextual story, all as a basis to perform an unnecessary strip search, and all without any apparent motive for such behavior. However, in ruling on a motion for summary judgment, it is not the function of the court to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249. Given the evidence in the record, a reasonable juror could believe Ford's testimony and find that Westenhofer did not feel a lump in Ford's groin area. Therefore a genuine issue exists as to whether Ford's constitutional rights were violated. Accordingly, the court must now determine whether Ford has provided evidence sufficient to

establish that a genuine issue of fact exists as to whether Metro is liable for the alleged constitutional violation.

## II.  Metro's Liability

To establish municipal liability for failure to adequately train, a plaintiff must prove (1) that a training program is inadequate to the tasks the officers must perform, (2) the inadequacy is the result of the municipality's deliberate indifference, and (3) the inadequacy is closely related to or actually caused the plaintiff's injury.  *See Hill v. McIntyre* 884 F.2d 271, 275 (6th Cir. 1989) (citing *City of Canton v. Harris,* 489 U.S. 378, 3889-91,109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).  That a plaintiff may have suffered a deprivation of a constitutional right at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably.  *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 406-07, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

Ford claims that Metro's policy of training its officers is constitutionally inadequate and this inadequacy caused Westenhofer to violate her constitutional rights.  In support of her claim that Metro failed to properly train Westehnofer, Ford asserts that Westenhofer was not aware of the constitutional requirement of reasonable suspicion as a prerequisite to conducting a strip search. Ford states that Metro Corrections' custom of allowing employees who are wholly unaware of the constitutional requirements surrounding detainee searches to in fact search those detainees constitutes a deliberate indifference to her rights.  *See* Plaintiff's Response p 5.

Metro, however, offers undisputed evidence that Westenhofer received training regarding the searching of incoming inmates as part of her initial instruction when she was hired by Metro Corrections.  Metro also offers undisputed evidence that all Metro Corrections officers receive initial

training and yearly follow up training.  Ford offers no evidence to support a finding that Metro's training was inadequate as to Westenhofer or any other Corrections officer.  While Westenhofer's testimony indicates that she was unaware that Metro Corrections policy required notification of a supervisor before a strip search is performed, it is clear from her testimony that Westenhofer was aware that a constitutional strip search required reasonable suspicion.  Ford has simply failed to provide evidence sufficient to create a genuine issue of fact as to whether Metro's training program was inadequate.  Accordingly, we will grant Metro's motion for summary judgment.

     A separate order will be entered herein this date in accordance with this opinion.