UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

KRYSTAL FORD                                                                                     PLAINTIFF

v.                                                                            CIVIL ACTION NO. 3:05-CV-347

LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT, et al.                                                                    DEFENDANTS

### MEMORANDUM OPINION

This matter is before the court upon the motion of the defendant, Tobhiyah Westenhofer ("Westenhofer"), a Metro Corrections Officer, for summary judgment on the basis that the search she performed on the plaintiff, Krystal Ford ("Ford"), did not violate Ford's constitutional rights.

In this civil rights action alleging a violation of 42 U.S.C. § 1983, Ford claims that her constitutional rights were violated when she was subjected to a strip search while in the custody of Louisville-Jefferson County Metro Corrections ("Metro Corrections")[1]. In particular, Ford contends that Westenhofer lacked the reasonable suspicion necessary to conduct a strip search.

### BACKGROUND

On December 14, 2004, Ford was arrested on shoplifting charges and taken to Metro Corrections. In accordance with Metro Corrections procedure, all persons admitted to the jail are

---

[1] Ford also brought a number of state law claims which are not in issue here.

- 2 -

subjected to a hand or "pat down" search[2]. At the time Ford was booked, Officer Chris Johnston was processing and searching the newly arrested detainees. However, there was no female officer on duty on the booking floor. Westenhofer was working in the property room that evening, and because Metro Corrections' policy requires that female detainees be searched by female officers, Officer Johnston asked Westenhofer to perform the search.

Westenhofer conducted a pat down search of Ford in the grill area of the jail[3] during which Westenhofer learned that Ford was wearing multiple layers of clothing, including thermal underwear under her jeans. Westenhofer asked Ford to remove the outer layer of her clothing, including her jeans, and conducted a second pat down search. The parties provide differing versions as to what transpired next.

Westenhofer claims that during the second pat down search she felt a lump in Ford's groin area, possibly indicating the presence of a foreign object. According to Westenhofer, she asked Ford what she had, and Ford replied that it was a sanitary pad. Ford denies having this conversation and denies that she was wearing a sanitary pad at the time of her arrest. Westenhofer testified, and Officer Johnston confirms, that she told Officer Johnston she was taking Ford to the restroom to change her sanitary pad. Westenhofer further testified that she took Ford to a private restroom, where she then asked Ford to change her pad and show it to her after she removed it. Westenhofer claims she watched Ford remove the pad and throw it in the trash, and then returned her to the grill area.

---

[2] Ford is not complaining of any violation of her rights in connection with a pat down search.

[3] The "grill" is the area where all arrestees are booked and initially searched.

Ford denies that she was wearing a sanitary pad and denies carrying anything in her underwear. Ford claims that upon completion of the second pat down search Westenhofer took her to the restroom, where Westenhofer then asked her to bend over, spread her buttocks, and cough while she looked inside of her. Westenhofer denies this.

After returning from the restroom, Ford did not complain about the search. However, on December 17, 2004, Ford did contact Metro Corrections Professional Standards Unit and requested to file a formal complaint, stating that she had been illegally stripped searched.

## DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The

evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. V. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

To prove a claim under 42 U.S.C. § 1983[4], a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution of the United States (2) caused by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55, 101 L.Ed.2d 40 (1988); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Because Westenhofer was acting as a Metro Corrections Officer, the second prong is satisfied. Accordingly, the court must determine whether there is a factual dispute regarding whether Ford was unconstitutionally strip searched and therefore deprived of her Fourth Amendment rights.

However, even if there is a factual dispute regarding whether Ford's constitutional rights were violated, Westenhofer would be protected from civil liability under the doctrine of qualified immunity if her conduct did not violate a clearly established constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In determining whether qualified immunity is applicable, the courts employ a two-part test. The court must first inquire as to whether a constitutional right would have been violated on the facts alleged. Second, assuming the violation is established, the court must consider whether the constitutional right was

---

[4] Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

clearly established. *See Smith v. Cupp*, 430 F.3d 766, 773 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 2155, 150 L.Ed.2d 272 (2001)).

In considering the issue of strip searches[5], courts must consider a balancing test for reasonableness. *See Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979); *Dobrowoiskyj v. Jefferson County, Ky.*, 823 F.2d 955, 957 (6th Cir. 1987). The Supreme Court has stated:

> The test of reasonableness under the Fourth Amendment. . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell*, 441 U.S. at 559.

In balancing the reasonableness of a strip search of an individual arrested for a minor offense not normally associated with violence, the Sixth Circuit has held that such an arrestee has a right to be free from a strip search unless there is an individualized reasonable suspicion that the arrestee is carrying or concealing a weapon or other contraband. *Masters v. Crouch*, 872 F.2d 1248, 1255 (6th Cir. 1989). This right is a clearly established right. *See Id.* at 1257.

Ford was arrested for a non-violent minor offense. Thus, in order for Westenhofer to have constitutionally performed a strip search, she needed to have an individualized reasonable suspicion that Ford was carrying or concealing a weapon or other contraband. Although a Metro Corrections Professional Standards Unit investigation concluded that Westenhofer had "probable cause" to strip search Ford, the court is not bound by that determination.

---

[5]It should be noted that Westenhofer does not believe that her search of Ford constitutes a strip search. Westenhofer, nevertheless, accepts the characterization of the search as a "strip search" solely for purposes of her motion for summary judgment.

There is no question that Westenhofer would have had that individualized reasonable suspicion if she felt a lump in Ford's groin area, whether that lump was or was not a sanitary pad. However, viewing the facts in a light most favorable to Ford, the court must conclude that a genuine issue of material fact exists as to whether she possessed that individualized reasonable suspicion. Westenhofer and Ford dispute the facts giving rise to the strip search. Westenhofer contends she felt a lump during the pat down search, while Ford contends she was not wearing or carrying anything which could have aroused Westenhofer's suspicion. Although Westenhofer does offer Officer Johnston's statement that she told him that she was taking Ford to the restroom to change her sanitary pad, a genuine issue of material fact still exists.

It may be unlikely that Westenhofer made up a pretext to strip search Ford and told Officer Johnston the pretextual story, all as a basis to perform an unnecessary strip search, and all without any apparent motive for such behavior. However, in ruling on a motion for summary judgment, it is not the function of the court to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249. Given the evidence in the record, a reasonable juror could believe Ford's testimony and find that Westenhofer did not in fact, feel a lump in Ford's groin area. Accordingly, a reasonable juror could find that Westenhofer lacked the necessary individualized reasonable suspicion to perform the strip search and therefore violated Ford's constitutional rights.

Furthermore, because Ford's right as a non-violent minor offender, to be free from a strip search absent individualized reasonable suspicion, was clearly established, the doctrine of qualified immunity is not applicable.

For the reasons set forth above, the court must deny Westenhofer's motion for summary judgment. A separate order will be entered herein this date in accordance with this opinion.